IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KATRINA OKOLI                    *
                                 *
v.                               *
                                 *    Civil Action No. WMN-06-3025
MAYOR AND CITY COUNCIL           *
OF BALTIMORE                     *
                                 *
     *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

This suit was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).  Briefly stated, Plaintiff alleged that she was subjected to sexual harassment by her supervisor, John Stewart, and that he then terminated her employment after she complained about that harassment.  More specifically, she claims she was fired on the afternoon of April 1, 2005, after Stewart saw a copy of a memo that Plaintiff sent that morning to the Mayor of Baltimore complaining about Stewart's harassing behavior.  A five-day jury trial was held in this matter on April 30, 2012, through May 7, 2012.  Three claims were presented to the jury - a hostile work environment sexual harassment claim, a quid pro quo sexual harassment claim, and a retaliation claim – all under Title VII.

After several hours of deliberations over the course of two days, the jury returned a verdict in favor of Defendant as to the two sexual harassment claims and in favor of Plaintiff as to the

retaliation claim.  Thus, the jury concluded that, while Plaintiff was not sexually harassed by her supervisor within the meaning of Title VII, she was terminated from her position for complaining about what she believed or deemed to be unlawful harassment.  The jury also, somewhat inexplicably, awarded to Plaintiff nominal damages in the amount of $60,000, despite the Court's instruction that nominal damages "must be limited to a token sum, such as $1.00."  5/18/2012 Tr. at 99.

    After the trial, Plaintiff filed a timely motion for judgment as a matter of law.  ECF No. 125.  Plaintiff suggests that the Court's instruction regarding quid pro quo harassment constituted "plain error" within the meaning of Rule 51(d)(2) of the Federal Rules of Civil Procedure.  She also moves pursuant to Rule 50 that the Court add additional "special damages" to her award to make her "whole as much as possible and to sanction the Defendant."  Id. at 5.  Specifically, she seeks "Plaintiff's actual back pay losses of $109,143 . . . plus sanctions of $60,000 or any monetary amount this Honorable Court deems appropriate."  Id.  She then filed an addendum to her motion for judgment in which she clarified her dispute with the Court's instructions and also seems to argue that, because the jury found in her favor as to the retaliation claim, the jury should have found for her on the harassment claims as well.  ECF No. 133.

    Defendant has also filed a motion for judgment as a matter

of law, or in the alternative, for a new trial.  ECF No. 126.

Defendant argues that no reasonable jury could have concluded

based on the evidence at trial that Plaintiff's employment was

terminated in retaliation for her making a discrimination

complaint.  Defendant also argues that the damage award must be

reduced to be consistent with an award of nominal damages.

The motions are ripe.

The Court turns first to Plaintiff's challenge to the jury

instructions.  Because Plaintiff offered no objection to the

instructions as proposed and given by the Court, they are

reviewed for plain error.  Under that standard, Plaintiff would

need to establish that the "particular jury instruction must

necessarily have caused the jury to act in complete ignorance of,

or to have misapplied, fundamentally controlling legal principles

to [her] inevitable prejudice."  Spell v. McDaniel, 824 F.2d

1380, 1395 (4th Cir. 1987).

In her motion, Plaintiff argued that the following portion

of the Court's instructions on her quid pro quo claim did not

reflect "the accurate interpretation of Title VII [of] Civil

Rights Act":

> The essence of Ms. Okoli's second claim of quid pro
> quo discrimination under the fourth element of proof
> is that her rejection of Mr. Stewart's sexually
> harassing demands was a motivating factor for her
> termination.

3

ECF No. 125 ¶ 6 (quoting 5/3/12 Tr. at 96).  She then quotes
that portion of the instructions where the Court first
introduced the quid pro quo claim and stated "the essence of the
claim is that the plaintiff's retention of her job depended on
her acceptance of sexual advances by her supervisor."  ECF No.
125 ¶ 7 (quoting 5/3/12 Tr. at 93).  She suggests that this
interpretation could confuse or mislead a jury and that
"acceptance" should have been replaced with "reaction"[1] or
"acceptance or rejection."  In her addendum, Plaintiff clarifies
that her dispute with this instruction as being that "the two
words 'acceptance and/or rejection' were not emphasized together
for understanding by a reasonable person."  ECF No. 133 at 2.

     The Court concludes that the instructions regarding quid
pro quo discrimination, taken as a whole, accurately present the
state of the law.  Whatever slight nuance Plaintiff believes
would be reflected in her suggested wording does not make a
substantive difference in the instruction.  The Court's wording
certainly does not rise to plain error.

     Plaintiff also argues in her Addendum that the Court should
have included a "mixed-motives" instruction.  Id. (citing Desert

---

[1] In setting out the actual elements of a quid pro quo claim, the
Court stated the fourth element as "[t]hat Ms. Okoli's reaction
to the sexual harassment affected a tangible aspect, or aspects,
of plaintiff's employment, such as her termination."  5/3/12 Tr.
at 95.

Palace, Inc. v. Costa, 539 U.S. 90 (2003)).  The Court
instructed the jury that for Plaintiff to establish quid pro quo
discrimination, she just had to establish that her rejection of
her supervisor's demands "was a motivating factor for her
termination."  Id. at 96.  Again, while the Court did not use
the precise language for which Plaintiff now advocates, the
language it did use properly states what must be established in
a mixed motives case.  See Hill v. Lockheed Martin Logistics
Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004) ("under the
"mixed-motive" framework, a plaintiff must offer sufficient
evidence of discrimination so that a reasonable jury could
conclude that discrimination was a motivating factor for the
adverse employment action").

In her final complaint about the instructions, Plaintiff
takes issue with the Court's instruction concerning Plaintiff's
hostile environment claim.  The Court explained that when
considering whether the work environment was sufficiently
hostile, the jury should:

> consider the total circumstances and determine whether
> the alleged harassing behavior was such that would
> seriously affect the psychological well-being of a
> reasonable person.  This includes considering the
> frequency of any discriminatory conduct, its severity,
> whether it was physically threatening or humiliating,
> or a mere offensive utterance, whether it reasonably
> interfered with the plaintiff's work performance, and
> its effect on the plaintiff's psychological well-
> being.

5/3/12 Tr. at 95 (emphasis added).  Plaintiff suggests that instead of "'and[,]' [t]his word should probably read 'or.'" ECF No. 133 at 3.  The instruction as given, however, is correct as the jury was to consider all of those factors.

As to Plaintiff's argument that, because the jury found for her on her retaliation claim, it should also have found for her on her two sexual harassment claims, the Court must assume that Plaintiff is arguing either for judgment as a matter of law under Rule 50 as to those counts or for a new trial under Rule 59.  Under Rule 50, judgment as a matter of law is appropriate only where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  The Court can set aside a verdict and order a new trial only if the verdict is (1) against the clear weight of the evidence; or (2) based on false evidence; or (3) will result in a miscarriage of justice. Spell v. McDaniel, 606 F. Supp. 1416 (E.D.N.C. 1985).

While the jury's conclusion that Plaintiff was not subjected to sexual harassment and yet was retaliated against for complaining about harassment might initially strike one as unusual, that conclusion could be found to be consistent with the evidence.  At trial and in her current motion, Plaintiff relied on some rather tenuous evidence of harassment.  For example, she submitted evidence that Stewart had given her a set

of different teas themed on the "Twelve Days of Christmas."
Since each verse of the Twelve Days of Christmas song includes
the lyric, "my true love gave to me," Plaintiff questioned
Stewart regarding his giving of that gift: "You wanted me to be
your lover.  Isn't that true?  That's why you gave me this 12
days of Christmas, to imply that you wanted me to be your lover.
Isn't that true?"  5/2/2012 Tr. at 212-13.  Furthermore, she
asserts in her motion that because the Christmas card she claims
was given with the tea set[2] was signed, "Always, JPS," the jury
should have recognized that "[a]ny single word before 'always'
such as 'love' or 'yours' is a clear inference of Mr. Stewart's
intent and desire to have a sexual relationship with Plaintiff."
ECF No. 133 at 4.

From Plaintiff's submission of that evidence and her
argument from that evidence, the jury could have concluded that
Plaintiff was one who might misread the intentions of others and
that while Mr. Stewart was not sexually harassing her she may
have believed that he was.[3]  They also could have concluded that

---

[2] Stewart testified that he did not give the tea set to Plaintiff
as a Christmas gift.  He testified that Plaintiff saw it in the
trunk of his car among some things he found when cleaning out
his mother-in-laws' house, Plaintiff asked if she could have it,
and he said yes.  Id. at 210-11.

[3] Plaintiff also testified about more overt actions on the part
of Stewart including: touching her leg, kissing her on one
occasion, and propositioning her with regard to a "Jacuzzi
fantasy," although there was no evidence corroborating this

when Stewart became aware that Plaintiff was making these allegations about him, he chose to terminate her employment, even though he knew that her harassment claims had no merit. Under Title VII, "[a] finding of unlawful retaliation . . . is not conditioned on the merits of the underlying discrimination complaint.")  Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000).

The Court now turns to Defendant's motion for judgment as a matter of law, or alternatively, for new trial.  Defendant relies primarily on Stewart's testimony that he was concerned about Plaintiff's job performance long before she made her complaint of harassment and on the testimony of Stephen Litzenberger that the metadata associated with her termination letter indicated that the letter was drafted one week before Plaintiff sent her complaint to the Mayor.  Much of this same evidence, however, was before the Court of Appeals for the Fourth Circuit when it reversed this Court's grant of summary judgment on Plaintiff's retaliation claim.  The Fourth Circuit noted that Plaintiff had made two earlier complaints - January 26, 2005, and March 23, 2005, emails to Alvin Gillard - that raised the issue of harassment.  Okoli v. City of Baltimore, 648 F.3d 216, 224 (4th Cir. 2011).  That court also found it

---

testimony.  The jury could have simply found Mr. Stewart's vehement denial of any such conduct to be more credible than the testimony of Plaintiff.

significant that, while Stewart might have contemplated firing Plaintiff and may have already drafted the termination letter, "Stewart actually fired Okoli only after learning of her [April 1, 2005] complaint." Id. The jury could have found that, while Stewart had issues with Plaintiff's job performance, it was only as he realized that she was pressing her harassment claim that he decided to terminate her employment.

The Court must now turn to the issue of damages. Preliminarily, it is undisputed that Plaintiff offered no evidence, whatsoever, as to any damages of any kind that she may have incurred as a result of her termination. Towards the end of Plaintiff's case-in-chief, but before she had rested, the Court presented Plaintiff and Defendant's counsel with a preliminary draft of its proposed jury instructions. That draft included an instruction on compensatory damages. It was noted to Plaintiff, however, that because she had yet to present any evidence of compensatory damages, the Court included an alternative nominal damage instruction and indicated it would use the appropriate instruction, depending on whether Plaintiff introduced any evidence related to her economic damages. She did not.

At the close of Plaintiff's case, Defendant moved to dismiss Plaintiff's claim for compensatory damages, noting that "[t]here has been absolutely no evidence of any damages

whatsoever." 5/2/12 Tr. at 60. The following exchange between the Court and Defendant's counsel occurred:

> THE COURT: Even assuming that's correct, and it appears that it is, there is still nominal damages that can be awarded, and those nominal damages would include in addition to what the jury determines to be a token award. The effect would be to leave the matter open for an award of costs and other matters, attorneys' fees. We don't have that in this case, but cost would be another factor. So that would not render the claim dismissible.

> MR. GILKEY: Right, Your Honor. Granted that her claims themselves are not dismissible. I guess what I am asking the Court is any claim for damages or any remedy be limited to nominal damages only, because there has been absolutely no evidence of anything beyond that.

> THE COURT: That would be a matter for instructions, and that addresses exactly why I provided, with respect to my tentative instructions, that the copies I provided to you this morning with regard to damages present alternative instructions, one being nominal damages, and the other being damages that would relate to back pay and front pay, had there been evidence presented in that regard.

> It appears that you are correct, that there hasn't been, but the nominal damages would appear to be the appropriate instruction. But that's a matter for instructions, and not with respect to a motion.

> MR. GILKEY: I understand what you're saying, Your Honor, and I guess I can't get this dividing line out of my head, Your Honor. Is the Court essentially saying that it will not give an instruction to the jury on compensatory damages, but only nominal damages?

> THE COURT: That is my expectation at this point, the plaintiff's case being closed and there not being other evidence that would warrant a different instruction.

Id. at 60-62.  Despite this exchange, Plaintiff neither moved to

re-open her case nor did she explain her decision to not

introduce evidence of damages.

    After the close of Defendant's case, the Court inquired if

the parties wish to take exception to the Court's proposed

instructions:

> THE COURT: First, I think the record should reflect
> that we held a charging conference in chambers after
> the court day yesterday and went over my proposed
> instructions, copies of which I had provided to Mr.
> Gilkey and Ms. Okoli the day before yesterday, or the
> day before that.  I'm not sure which.  There was a
> question about the damages portion of the
> instructions, and I had prepared alternative
> instructions, depending upon what the evidence
> ultimately was.  This morning in chambers we had a
> follow-up conference, where I advised the parties that
> because of the absence of any specified damage
> evidence, that I would give the nominal damages
> instruction.  I had prepared a verdict form, which I
> provided to the parties before our lunch break, which
> also reflects that.  So before we get started with
> arguments and instructions to follow, are there any
> anticipated exceptions to the instructions that I had
> prepared?
>
> MS. OKOLI: No, Your Honor.

5/18/2012 Tr. at 65.

    The Court then gave the following instruction concerning

the award of damages:

>     If you find in favor of Ms. Okoli under these
> instructions with respect to any one of her three
> claims, then you will be required to return a verdict
> in her favor, with an award of what we refer to as
> nominal damages.

> Although the amount of nominal damages is left to
> your discretion, even so, assuming that you have found
> in the plaintiff's favor on one or more of these
> claims, that amount must be limited to a token sum,
> such as one dollar or other amount which represents to
> you a token amount of damages.

Id. at 98-99.

Notwithstanding the lack of any evidence related to damages and despite the Court's instruction that damages be limited to "a token sum," the jury awarded $60,000. Citing authority from this and other circuits that nominal damages must be limited to a token amount, Defendant moves to reduce the damage award to one dollar. ECF No. 126 at 6-7 (citing Price v. City of Charlotte, 93 F.3d 1241 (4th Cir. 1996); Magnett v. Pelletier, 488 F.2d 33 (1st Cir. 1973); Ramano v. U-Haul, Inc., 233 F.3d 655 (1st Cir. 2000)). These cases cited by Defendant stand for the proposition that "[n]ominal damages are a mere token, signifying that the plaintiff's rights were technically invaded even though he suffered, or could prove, no loss or damage." Magnett, 488 F.2d at 35 (holding that $500 cannot properly be regarded as nominal damages). There is abundant additional authority for the proposition that nominal damages must be limited to an amount such as one dollar. For example, in Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005), the Eighth Circuit affirmed the district court's reduction to one dollar of a jury award of $75,000 in "nominal damages," observing that the "district court

12

had a duty to make the nominal damages award conform to the law"
and that "one dollar is recognized as an appropriate value for
nominal damages."  See also, Huntley v. Community Sch. Bd. of
Brooklyn, 579 F.2d 738 (2nd Cir. 1978) (noting that "generally
accepted practice would consider as 'nominal' only an amount
such as a few cents or a few dollars," and opining that it was
unclear if award of $100 in nominal damages could withstand a
challenge) (citations omitted).

Plaintiff does not challenge this authority nor does she
offer any contrary authority of her own.  Instead, she argues as
follows:

> Per pretrial and trial discussion, the Plaintiff was
> not to introduce pictures of self, disclose or
> reference money damages, and not to express or imply a
> causal connection of Plaintiff's pain and suffering as
> it relates to this matter; otherwise, this would "open
> the door" for the Defendant to Plaintiff's prior Title
> VII cases.

ECF No. 125.  While it is true that Plaintiff was cautioned that
evidence of emotional damages might "open the door" to
Defendant's introduction of evidence of other discrimination
claims, that caution had no applicability to economic damages.
The issue arose as follows.

In the week prior to the commencement of the trial, the
Court held a hearing to address motions in limine and other
anticipated evidentiary and procedural issues.  One of the
issues raised concerned pictures of Plaintiff taken shortly

13

after Stewart terminated her employment which Plaintiff asserted would show that her hair prematurely greyed and stopped growing and that she became overweight.  She attributed these physical changes to stress and depression caused by the problems she was having with Stewart and to the termination of her employment.

Defendant objected to the introduction of the photographs or any evidence concerning Plaintiff's emotional, mental, or physical well-being on the ground, <u>inter alia</u>, that at the same time Plaintiff was contending that Stewart was subjecting her to harassment, she was asserting a similar claim of discrimination against another employer, United Parcel Service (UPS). Apparently, in addition to working for Defendant, Plaintiff was also working for UPS at the same time.  Defendant also had evidence that Plaintiff had asserted discrimination claims against at least two other previous employers and suggested that Plaintiff had followed a consistent pattern of alleging harassment whenever her job performance was criticized or whenever she perceived that her employment was going to be terminated.[4]

---

[4] In her deposition, Plaintiff acknowledged that she had brought claims of discrimination against the following former employers: The Center for Communications in 1984; PEMCO Corp. in 2001; and UPS in 2005.  Pl.'s Dep. at 133-36, 232-36.  In addition, Plaintiff testified that she was sexually harassed by yet another employer, Fox Chevrolet, in 1999.  <u>Id.</u> at 120.  She simply refused to answer questions regarding several other former employers.

14

The Court explained that any evidence regarding hair loss or changes in Plaintiff's physical condition or other signs of stress or depression might open the door to evidence about these other claims of discrimination.  The Court reasoned that the jury would need to consider whether Plaintiff's stress or depression and related physical manifestations was caused by Stewart's actions, or by the contemporaneous discrimination to which she allegedly was subjected at UPS.  At the end of the discussion, Plaintiff indicated she would not enter the photographs into evidence.  The Court also indicated that it would not allow Defendant to introduce any evidence of Plaintiff's discrimination claims against other employers unless Plaintiff opened the door by introducing evidence of damages that could have been caused by the harassment or discrimination of these other employers.

There is, of course, no logical connection between the back pay that Plaintiff now seeks and the opening of the door to evidence of other discrimination claims.  Plaintiff could have introduced evidence concerning the income she claims she has lost because of the termination of her employment by Defendant and Defendant would have introduced evidence related to her efforts at mitigating that loss.  She did not do so and, as a

result, the jury's award has no evidentiary basis.  That award must, therefore, be reduced to one dollar.[5]

A separate order consistent with this memorandum will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED:  June 28, 2012

---

[5] As the prevailing party, Plaintiff would also be entitled to costs.